## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 01 2020, 8:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph C. Gonzalez, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 1, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2295<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Barbara Crawford, Judge<br><br>Trial Court Cause No.<br>49G01-1811-MR-40617 |

**Najam, Judge.**

# Statement of the Case

Joseph C. Gonzalez, Jr. appeals his conviction and sentence following a jury trial for murder, a felony, and his adjudication as a habitual offender. Gonzalez raises two issues for our review, which we revise and restate as follows:

1.    Whether the trial court erred when it granted the State's motion to continue Gonzalez's trial outside of the timeframe required by Gonzalez's speedy-trial request.

2.    Whether the trial court improperly participated in plea negotiations such that Gonzalez's sentence should be reduced.

We affirm.

# Facts and Procedural History

In late 2018, Gonzalez lived in a "rooming house" in Indianapolis. Tr. Vol. 2 at 223. At that time, Gonzalez was in a relationship with Sarah Brianne Serna, and Serna would stay with Gonzalez "from time to time." Tr. Vol. 3 at 19. Gonzalez and Serna "seemed to fight a lot," and their relationship was "not good." Tr. Vol. 2 at 217.

In the late hours of November 16 and into the early hours of November 17, Gonzalez's neighbor, Steven Andrews, heard Gonzalez and Serna argue. Andrews then heard Serna "scream" for a "long time," and he "heard a clunk." *Id*. at 225, 246. Andrews did not hear anything further, so he exited his room. He then saw Gonzalez "[p]acing back and forth" in the hallway, and he noticed

that the door to Gonzalez's room was closed. *Id*. at 225. Andrews then asked Gonzalez if Serna was alright. Gonzalez responded: "no." *Id*. Gonzalez then left the rooming house, and Andrews called 9-1-1.

[5] Officers with the Indianapolis Metropolitan Police Department responded to the scene. When they arrived at Gonzalez's room, officers saw Serna's deceased body on the sofa. There were "defects" on Serna's head, and there was blood on the walls. Tr. Vol. 3 at 128. Officers also found a sledgehammer on the floor that had Serna's blood on it. The coroner determined that Serna had died from blunt force trauma to the head. When officers located Gonzalez later that morning, he was wearing a shirt that had Serna's blood on it.

[6] On November 20, the State charged Gonzalez with murder, a felony. On April 18, 2019, Gonzalez, while represented by counsel, requested a speedy trial pursuant to Indiana Criminal Rule 4(B). The trial court granted Gonzalez's request and scheduled his trial for June 24.

[7] The State submitted various items to a DNA analyst for testing. On June 12, the State received the initial results of the DNA testing. The results indicated the possible presence of male DNA, so the State asked the laboratory to perform additional testing.

[8] On June 14, Gonzalez filed a motion to continue. At a hearing on his motion on June 17, Gonzalez requested to proceed *pro se*. Also at that hearing, the State informed the court that it believed that the results of the additional DNA

testing would be available before the trial date. The court granted Gonzalez's motion to proceed *pro se* but ordered that the trial remain set for June 24.

[9] On June 18, the State filed a motion to continue Gonzalez's trial pursuant to Indiana Criminal Rule 4(D). In that motion, the State asserted that, after the hearing on June 17, the DNA analyst had informed the State that the additional DNA testing would not be completed prior to the June 24 trial date. The State further asserted that the DNA analyst had indicated that the testing would be completed within thirty days.

[10] The trial court held a hearing on the State's motion on June 20. At the hearing, the State reiterated to the court that it had initially believed that the additional DNA testing would be completed prior to trial but that it had recently learned that the results would not be available by that date. The State also asserted that the DNA evidence was "necessary" for its case and that it had made a "reasonable attempt" to get the evidence in time. Tr. Supp. at 7. The trial court granted the State's motion and rescheduled Gonzalez's jury trial to July 29. The State ultimately received the DNA results after that hearing.

[11] On June 28, Gonzalez, *pro se*, filed a motion for discharge. In that motion, Gonzalez asserted that more than seventy calendar days had passed without a trial in violation of Indiana Criminal Rule 4(B) and that he had not caused any delay. Accordingly, he asserted that he was entitled to a dismissal of the charge

against him.  The trial court denied Gonzalez's motion.[1]  Thereafter, the State alleged that Gonzalez was a habitual offender.

[12]  At the final pretrial conference on July 22, the following colloquy occurred:

> THE COURT:  All right.  [State], did you—I forgot to ask this. Did you ever make an offer to Mr. Gonzalez in this case?
>
> [STATE]:  Judge, I don't know if we actually made an offer.
>
> THE COURT:  Okay.
>
> [STATE]:  Any offer that I would make would be to the murder. I would offer 50 years in the Department of Correction[] with six years on the habitual at this point.  So a total of 56 years.
>
> THE COURT:  All right.  So Mr. Gonzalez, you understand that offer?
>
> MR. GONZALEZ:  I understand the offer and I told her once before I don't—
>
> THE COURT:  You reject it—
>
> MR GONZALEZ:  —I don't want to engage in—I don't want to engage in any—

---

[1] Gonzalez filed numerous motions for discharge pursuant to Criminal Rule 4 and motions to dismiss for "state misconduct" based on the State's failure to bring him to trial within seventy days.  *See, e.g.*, Appellant's App. Vol. 2 at 117 (emphasis removed).   The trial court denied each of those motions.

THE COURT:  You reject it?

MR. GONZALEZ:  Yeah.

THE COURT:  Okay.  That's all I need to know.

Tr. Vol. 2 at 67-68.

[13]    The court held a bifurcated trial beginning on July 29.  Following the first phase of the trial, the jury found Gonzalez guilty of murder.  Prior to the second phase of the trial, the following conversation occurred between the court and the parties:

THE COURT:  And you were going to say something to Mr. Gonzalez?

[STATE]:  Yes.

THE COURT:  You may.

[STATE]:  We would—the State would not be opposed if the Defendant wished to exercise his right to waive the jury trial portion and have Your Honor hear the case for the habitual phase.  The Defendant also—we would make a plea offer to the Defendant on the habitual if he wanted to admit to the two priors.  I believe the range is 6 to 20.  We would be willing to offer 15 years on that portion.  Then obviously sentencing for the jury conviction would be at a later date.  Or the Defendant could always plead open to the habitual as well.

MR. GONZALEZ:  I do not.

THE COURT:  Okay.  So you want to go forward with this portion of the jury trial?

MR. GONZALEZ:  I don't believe you need to read this to the jury.

THE COURT:  No, . . . this has to be read to the jury.

MR. GONZALEZ:  Say that again?

THE COURT:  If you want to go forward on this part.

MR. GONZALEZ:  Yeah.

Tr. Vol. 4 at 142-43.

[14]     Following the second phase of the trial, the jury found that Gonzalez was a habitual offender.  The court entered judgment of conviction accordingly and sentenced Gonzalez to an aggregate sentence of eighty years in the Department of Correction.  This appeal ensued.

## Discussion and Decision

### *Issue One:  Motion to Continue*

[15]     Gonzalez first asserts that the trial court erred when it granted the State's motion to continue his trial date outside of the timeframe required by his speedy-trial request.  The right of an accused to a speedy trial is guaranteed by the United States and Indiana Constitutions.  U.S. Const. amend. VI; Ind. Const. art. 1, § 12.  Indiana Criminal Rule 4 implements those rights and

generally requires a criminal defendant to be brought to trial within seventy days of his speedy-trial request. Ind. Criminal Rule 4(B)(1).

[16] However, among other reasons for extension of that time frame, Indiana Criminal 4(D) provides as follows:

> If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued[.]

[17] As this Court has explained:

> Thus, in order to grant a continuance as provided in Rule 4(D), the trial court must be satisfied that the State made a reasonable effort to procure the evidence. Whether the requested delay is reasonable should be judged according to the circumstances of the particular case. In addition, we evaluate the reasonableness of the State's request for a trial delay in light of the information known or available to it at the time of the request. As a general rule, a trial court's decision to grant a Rule 4(D) continuance is reviewed for an abuse of discretion.

*Dilley v. State*, 134 N.E.3d 1046, 1049-50 (Ind. Ct. App. 2019) (citations omitted).

[18] Here, the State filed a motion to continue Gonzalez's trial pursuant to Criminal Rule 4(D) based on the unavailability of DNA test results. On appeal, Gonzalez asserts that the court abused its discretion when it granted that

motion because the State made no "reasonable effort" to procure the DNA evidence. Appellant's Br. at 19. We cannot agree.

[19] Here, the State submitted several items to the laboratory to be tested for DNA, and the State received the initial results on June 12. Based on the initial results, which indicated the presence of male DNA, the State requested additional testing. As of a hearing on June 17, the State believed that the additional test results would be available before Gonzalez's June 24 trial date. However, following that hearing, the DNA analyst informed the State that the testing would not be done by the trial date but that the results would be available in thirty days. At that point, the State promptly filed its motion to continue and asked that the DNA testing be expedited.

[20] Contrary to Gonzalez's assertion, the fact that the State ultimately received the test results prior to the initial trial date does not demonstrate that the State failed to take reasonable steps to procure that evidence. Rather, as discussed above, the State submitted the items for DNA testing in time to receive the initial results well before Gonzalez's trial date. Then, when the State asked for additional testing, it did so with the understanding that the additional test results would also be available prior to trial. The State only filed its motion to dismiss after it had learned that the results would not be ready in time. And the State filed its motion based on the information known or available to it at that time. *See Dilley*, 134 N.E.3d at 1050. It was not until after the hearing on the State's motion that the State received the results.

[21] We hold that, under the facts of this case, the State made a reasonable effort to obtain the additional DNA results in time for Gonzalez's initial trial date. The trial court did not abuse its discretion when it granted the State's motion to continue.

### Issue Two: Gonzalez's Sentence

[22] Gonzalez next contends that the trial court improperly inquired into the "specifics" of the plea negotiations between Gonzalez and the State. Appellant's Br. at 25. He also asserts that, because the offers were solicited by and communicated in front of the court, the court "was aware of what the State would settle for" and "suggested that he would receive something more if he went to trial." *Id.* And he maintains that, as a result, he received a sentence that "was significantly in excess of what was offered." *Id.* Accordingly, Gonzalez asks us to reduce his sentence.

[23] We first note that, to the extent we can discern Gonzalez's argument on this issue, he has not supported it with cogent reasoning. In addition, Gonzalez has not cited any case law or other legal authority to support his contention that, even if the court improperly participated in plea negotiations, the appropriate remedy would be a reduced sentence. As such, Gonzalez has waived this issue for our review. *See* Ind. Appellate Rule 46(A)(8)(a).

[24] In any event, the record does not support Gonzalez's claim that the trial judge improperly solicited a plea offer or participated in plea negotiations. On the contrary, the record demonstrates that, at a pretrial hearing, the court simply

asked the State if it had made an offer to Gonzalez. *See* Tr. Vol. 2 at 67. The State responded with the specific terms of a plea offer, which Gonzalez rejected. Similarly, following the first phase of the trial, the court asked the State if it had "something to say" to Gonzalez. Tr. Vol. 4 at 142. Again, the State responded by offering Gonzalez a plea deal for the habitual offender enhancement, which Gonzalez rejected. At no point during either of those conversations did the court solicit the details of the offers, attempt to convince Gonzalez to accept the offers, or imply that Gonzalez would receive a harsher sentence if he declined the offers. As the trial court did not improperly interfere with the plea discussions, Gonzalez's argument on this issue must fail.[2]

[25] In sum, we affirm Gonzalez's convictions and sentence.

[26] Affirmed.

Bradford, C.J., and Mathias, J., concur.

---

[2] Gonzalez makes no argument that the trial court abused its discretion when it sentenced him or that his sentence is inappropriate in light of the nature of the offense or his character.